NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY FURINA, | : |
| Plaintiff, | : Civil Action No. 10-2043 (SRC) |
| v. | : OPINION |
| DETECTIVE ARIEL GONZALEZ, et al., | : |
| Defendants. | : |

**CHESLER**, District Judge

    This matter comes before the Court upon Defendants' motion for summary judgment [docket entry 32]. Plaintiff has opposed the motion. The Court has considered the papers submitted by the parties. For the reasons expressed below, the Court will grant Defendants' motion.

    I.    BACKGROUND

    This civil rights action arises out of the March 20, 2009 arrest of Plaintiff, Anthony Furina ("Plaintiff" or "Furina"), by law enforcement officers employed Defendant, the Waterfront Commission of New York Harbor ("Waterfront Commission"). The Waterfront Commission is a government entity created by compact between the states of New York and New Jersey. N.J.S.A. 32:23-1. Furina was, at the relevant time, employed as a pier superintendent at the Bayonne Auto Terminal in Bayonne, New Jersey. The Waterfront Commission Act provides

that a pier superintendent's duties include the supervision of longshoremen, a job the statute specifically distinguishes from the pier superintendent position. N.J.S.A. 32:23-6. By statute, a pier superintendent cannot perform the work of a longshoreman, that is, move freight on and off ships. Id.; N.J.S.A. 32:23-27.

    A confidential informant advised Detective Ariel Gonzalez, one of the Defendants named in this case, that Furina was driving heavy equipment on and off ships at the Bayonne Auto Terminal. Gonzalez investigated and confirmed that Furina was registered in the Waterfront Commission's database as pier superintendent, not a longshoreman. On March 20, 2009, after meeting to discuss a strategy to handle this situation, various Waterfront Commission officers, including Defendants Detective Gonzalez and Captain William Brown, drove to the Bayonne Auto Terminal and set up surveillance. According to Defendants, Gonzalez and Brown positioned themselves with a clear line of sight to the loading ramp of the vessel, the Asian Trust. While on surveillance, Gonzalez maintained phone contact with his confidential informant. After Gonzalez and Brown observed Furina driving heavy equipment onto the Asian Trust two times, they drove their vehicle onto the vessel and confronted Furina about his activities. According to the deposition testimony given by Gonzalez and Brown, Captain Brown asked him "What are you doing?" and Furina responded that he was "just helping the boys out." (Brown Dep. Tr. 31:22-32:5; Gonzalez Dep. Tr. 89:12-90:24.) Furina disputes that version of the conversation, having testified at deposition that he informed the officers merely that he was working.

    In any event, the officers advised Furina at that time that he was being placed under arrest for performing the work of a longshoreman without being registered as a longshoreman, in

violation of the Waterfront Commission Act. Shortly thereafter, other officers involved in the operation came on the scene, including Captain Politano, who handcuffed Furina with his hands behind his back. Furina was placed in Politano's vehicle, read his Miranda rights and transported to the Bayonne Police Station. His handcuffs were removed upon arrival at the station.

Furina filed this action on or about March 22, 2010 in the Superior Court of the State of New Jersey. He alleges that Defendants Detective Gonzalez, Captain Brown and the Waterfront Commission unlawfully arrested him and used excessive force in violation of his Fourth Amendment rights. He also alleges that the Waterfront Commission violated his due process rights by failing to properly train and/or supervise its employees. Plaintiff seeks relief under 42 U.S.C. § 1983 against Defendants for these alleged violations of his civil rights. The Complaint also appears to assert a common law claim for malicious prosecution.

Defendants removed this action to federal court on April 22, 2010. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II.  DISCUSSION

### A.  Standard of Review

The standard upon which a court must evaluate a summary judgment motion is well-established. Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts

3

and inferences in the light most favorable to the nonmoving party. See Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

      Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Fed.R.Civ.P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the

4

nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

### B.     Civil Rights Claims Against the Waterfront Commission

The Complaint asserts that the Waterfront Commission is liable for its officers' alleged use of excessive force and for the allegedly unlawful arrest and detention of Furina. Furina's claim against the Waterfront Commission arises under 42 U.S.C. § 1983, which creates a private cause of action for a constitutional violation committed by a person acting under color of state law. That statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

28 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or the laws of the United States. See Parratt v. Taylor, 451 U.S. 527, 535 (1981). A municipal or local government entity such the Waterfront Commission is considered a "person" within the meaning of 42 U.S.C. § 1983. Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690, 689 (1978) (concluding that municipalities and other local government entities are "persons" within the meaning § 1983); Peters v. Del. River Port Auth. of Pa. and N.J., 16 F.3d 1346, 1352 (3d Cir. 1994) (holding that a bi-state agency created by compact between two states is considered a "person" under § 1983).

5

Plaintiff asserts § 1983 claims against the Waterfront Commission on the grounds that officers employed by the Waterfront Commission allegedly arrested Plaintiff without probable cause and used excessive force against Plaintiff in handcuffing him in connection with that arrest. It is well-established that § 1983 claims against a municipal or local government entity lack merit if they are based solely on a theory of respondeat superior liability. See Monell, 436 U.S. at 690-91; see also Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a supervising entity cannot be held liable for the acts of its employees and agents under those theories). Instead, municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [complained-of] injury." Monell, 436 U.S. at 694. For purposes of supporting municipal liability, a "policy" must have been made by a "decisionmaker [who] possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). A custom is an act "that had not been formally approved by an appropriate decisionmaker" but is "so widespread as to have the force of law." Bd. of County Comm'rs of Bryan County, Ok. v. Brown, 520 U.S. 397, 404 (1997).

Though Plaintiff has asserted in conclusory fashion in his brief that the "Commission instituted a policy that was the moving force behind his injury," (Pl. Br. at 8), he points to no evidence in the record to support this statement. Rather, he merely speculates that the absence of any other arrests for a suspected statutory violation of the kind underlying Furina's arrest – an unsubstantiated assertion in and of itself – demonstrates that the Waterfront Commission targeted

6

Plaintiff for the purpose of harassing and intimidating him. "Speculation and conjecture may not defeat a motion for summary judgment." Acumed LLC v. Advanced Surgical Svcs., 561 F.3d 199, 228 (3d Cir. 2009). Without evidence to support his § 1983 claims against the Waterfront Commission, Plaintiff has failed demonstrate the existence of a genuine issue of material fact, and no reasonable factfinder could find in his favor at trial. Thus, Plaintiff's § 1983 claims against the Waterfront Commission based on allegations of false arrest and excessive force will be disposed of pursuant to Rule 56(a).

Likewise, without adducing any evidence to support his § 1983 claims against the Waterfront Commission for failure to train and failure to supervise its officers, Plaintiff cannot prevail on these claims as a matter of law. The Supreme Court has held that "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). The claim has merit only where the municipality's inaction in the face of such an obvious need for training to prevent a violation of an individual's constitutional rights "may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." Id. at 390. To establish that a municipality's failure to train amounts to deliberate indifference, a plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (citing Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992) (internal footnote omitted). Similarly, § 1983 liability against a

municipality or local government entity predicated on its alleged failure to supervise its officers cannot lie unless the municipality's inadequate supervision "reflects a policy of deliberate indifference to constitutional rights." Tobin v. Badamo, 78 F.App'x 217, 219 (3d Cir. 2002). Plaintiff has come forward with no evidence at all that would establish a failure by the Waterfront Commission to train and/or supervise with deliberate indifference to an individual's Fourth Amendment constitutional rights.

Nor has Plaintiff come forward with any evidence that would establish that such a failure, even assuming one existed, *caused* Plaintiff to suffer a deprivation of his constitutional rights. The Third Circuit has held that, to prevail on a Monell claim, a plaintiff must also "show that the city's policy actually caused a constitutional injury." Fagan v. City of Vineland, 22 F.3d 1283, 1291 (3d Cir. 1994) (so holding in a failure to train case) (citing Canton, 489 U.S. at 389-90); see also Bd. of County Comm'rs of Bryan County, Ok. v. Brown, 520 U.S. 397, 408-10 (1997) (emphasizing that municipal liability may not attach without establishing a causal link between municipality's inadequate training and plaintiff's constitutional deprivation). "To prevent municipal liability for a hiring decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." Id. at 410. Nothing in the record indicates that Plaintiff may satisfy this essential element of his § 1983 claims against the Waterfront Commission.

Accordingly, the Waterfront Commission is entitled to summary judgment on the Complaint's § 1983 claims.

### C.     Claims Against Gonzalez and Brown

The Fourth Amendment guarantees an individual's right to be free from "unreasonable searches and seizures." U.S. CONST. amend. IV.  Plaintiff alleges that Defendants Gonzalez and Brown violated his Fourth Amendment rights in two ways - one, in arresting and detaining him without probable cause and two, in using excessive force against him.  For the reasons discussed below, Plaintiff's § 1983 claim premised on either violation may not surmount this Rule 56 motion.

#### 1.     False Arrest and Imprisonment

The Fourth Amendment "prohibits a police officer from arresting a citizen except upon probable cause." Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir.1995). To prevail on a claim for false arrest, a plaintiff must prove that the officer defendants lacked probable to arrest him. Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995).  Likewise, a claim for false imprisonment based on the arrest underlying the false arrest claim also requires a plaintiff to prove lack of probable cause.  Id. at 636.  The summary judgment motion as to Plaintiff's claims for false arrest and false imprisonment thus turns on whether the evidence of record would permit him to establish a lack of probable cause.  "The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir.1988).

Here, Defendants Gonzalez and Brown arrested Plaintiff for committing the offense of acting as a longshoreman without being registered to do so, in violation of the Waterfront Act.

The statute provides, in pertinent part, that "[n]o person shall act as a longshoreman within the Port of New York district unless at the time he is included in the longshoremen's register . . . ." N.J.S.A. 32:23-27.  Moreover, the Waterfront Act expressly provides that a violation of any of its provisions shall constitute a misdemeanor, punishable by fine and/or imprisonment.  N.J.S.A. 32:23-76.

The uncontroverted evidence presented to the Court clearly establishes that the arrest and imprisonment of Furina by Defendants Gonzalez and Brown on March 20, 2009 was based on probable cause.  The Third Circuit has held that "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti, 71 F.3d at 483.  Gonzalez received a tip from a confidential informant that Plaintiff Furina was moving freight on and off ships at the Bayonne Auto Terminal.  This activity falls within the statutory duties of a longshoreman, defined by the Waterfront Act as "a natural person other than a hiring agent, who is employed for work at a pier or other waterfront terminal, either by a carrier of freight by water or by a stevedore, to physically move waterborne freight on vessels berthed at piers, on piers or at other waterfront terminals." N.J.S.A. 32:23-6.  After receiving the tip, Gonzalez searched the Waterfront Commission's database and confirmed that Furina was registered as a pier superintendent, not a longshoreman. On surveillance, Gonzalez and Brown both observed Furina driving heavy equipment onto a ship berthed at the Bayonne terminal, consistent with the information being provided to Gonzalez by the informant, with whom he maintained phone contact during the surveillance operation. Though Furina disputes that the officers had a clear line of sight to the pier and loading ramp

where they contend he was moving equipment, Furina has not come forward with any competent evidence to refute their sworn testimony about what they observed. Indeed, Furina's own deposition testimony supports Defendants' account. Furina admitted that he had driven two pieces of heavy equipment onto the Asian Trust vessel on March 20, 2009.

The key question in determining the existence of probable cause is what facts and circumstances were within the arresting officers' knowledge. In this case, the evidence demonstrates Gonzalez and Brown were in possession of information that would lead a reasonable person to believe that Furina had improperly and unlawfully done the work of a longshoreman. This information is sufficient to warrant their belief that Furina had committed a misdemeanor violation of the Waterfront Act, thus supporting probable cause.

In light of such evidence, the Court concludes that no reasonable factfinder could find probable cause lacking. As such, summary judgment on Plaintiff's false arrest and imprisonment claims is warranted.[1]

2. Excessive Force

Defendants are also entitled to summary judgment on Plaintiff's excessive force claim. The claim is based on the allegedly forceful handcuffing of Plaintiff in connection with the March 20, 2009 arrest. To establish a claim of excessive force, a plaintiff must demonstrate that, under the totality of the circumstances, the officer's actions were not objectively reasonable in

---

[1] Plaintiff's inability as a matter of law to establish a lack probable cause is also fatal to his malicious prosecution claim, which is based on a criminal complaint filed against Furina for the Waterfront Act violation of unlawfully doing a longshoreman's work. See LoBiondo v. Schwartz, 199 N.J. 62, 90 (2009) (holding that the absence of probable cause is an essential element of a malicious prosecution claim and failure to prove it is fatal to the claim). Accordingly, Defendants are entitled to summary judgment on this claim, as they have argued.

light of the facts and circumstances confronting the officer. Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003) (citing Graham v. Connor, 490 U.S. 386, 397 (1989)). Plaintiff cannot prevail on this claim as a matter of law because, as Defendants argue, there is no evidence that either Defendant Gonzalez or Defendant Brown were personally involved in the actions which Plaintiff maintains amounted to excessive force.

To establish liability under § 1983, it is essential that a Plaintiff demonstrate a defendant's personal involvement in the alleged civil rights violation. Parratt, 451 U.S. at 537 n. 3. Personal involvement may be established through facts indicating a defendant's "personal direction or actual knowledge and acquiescence" with respect to the alleged violation. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). The record incontrovertibly demonstrates that neither Gonzalez nor Brown handcuffed Furina. Indeed, Furina does not dispute that it was another officer, Captain Politano, who placed handcuffs on him. Plaintiff has not adduced any evidence that Defendants Gonzalez and Brown knew that Furina's handcuffs were too tight or knew that they were otherwise in a condition that was causing injury to his wrists, which would be necessary as a bare minimum to establish either of the defendant officers' "knowledge and acquiescence" in the use of excessive force. Indeed, Defendant Gonzalez testified at deposition that he did not even see Politano place the handcuffs on Furina. According to both officers' deposition testimony, they did not hear Furina complain that the handcuffs were on too tight or that they were hurting him. Nor has Plaintiff come forward with any evidence that either of the defendant officers directed that handcuffs be placed on Furina in a manner that was forceful or likely to hurt him. Because there is no evidence that any one of the named Defendants to this suit was personally involved in committing an action with a degree of force not objectively

12

reasonable under the circumstances, summary judgment on the excessive force claim is warranted.

### 3. Qualified Immunity

Defendants have also argued that the § 1983 claim against them cannot proceed because the officers are entitled to qualified immunity. The Court agrees.

Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). The Supreme Court has held that whether a defendant is entitled to qualified immunity is a question for the court, not the jury, and should be decided early in the proceedings so that the defendant may avoid the burdens of litigation and thus enjoy the immunity to which he or she is entitled. Saucier v. Katz, 533 U.S. 194, 200-01 (2001). The Saucier court explained that "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct . . . If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." Id. at 205.

A court conducting a qualified immunity analysis in a section 1983 action must apply a two-pronged analysis. Id. at 201. The court must first consider whether, taking the facts in the light most favorable to the party asserting the injury, the facts demonstrate that the conduct of the state actor defendant violated a constitutional right. Id. Once a defendant asserts the qualified immunity defense, it is the plaintiff who bears the initial burden of demonstrating the violation, even when the defendant raises qualified immunity on a motion for summary judgment.

Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). The Third Circuit has held that "[i]f the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002). If the facts do make out a constitutional violation, then the court proceeds to the second step of the inquiry, which asks whether the right was clearly established. Saucier, 533 U.S. at 201. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640. If the right was not clearly established, the state actor is entitled to qualified immunity. Saucier, 533 U.S. at 202.

In this case, the Court need not proceed past the threshold question of the qualified immunity analysis because, on the record before the Court, Plaintiff cannot establish that the conduct of these officers violated Furina's Fourth Amendment guarantees against the use of excessive force. Nor, for the reasons expressed above, can Plaintiff establish that the officers arrested and detained him without probable cause, which is essential to demonstrate a Fourth Amendment violation. As Furina has failed to present facts that make out a constitutional violation, the qualified immunity inquiry may conclude. The Court finds that Defendants have established that they are entitled to qualified immunity on Plaintiff's § 1983 claims against them.

For this additional reason, summary judgment on all of Plaintiff's § 1983 claims against Defendants Gonzalez and Brown must be granted in Defendants' favor.

**III.   CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' summary judgment motion in its entirety.  An appropriate form of order will be filed together with this Opinion.

 s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: August 25, 2011